UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
                                          :
CONTINENTAL ENERGY CORPORATION,           :
                                          :
              Plaintiff,                  :
                                          :     04 Civ. 260 (GEL)
      -against-                           :
                                          :     **OPINION AND ORDER**
CORNELL CAPITAL PARTNERS,                 :
L.P. and YORKVILLE ADVISORS               :
MANAGEMENT, LLC,                          :
                                          :
              Defendants.                 :
------------------------------------------------------------x

Richard S. Heller and Susan C. Stanley, Shustak
Jalil & Heller, New York, NY, for plaintiff,

Seth T. Taube, Richard B. Harper, and Margaret Dooley
Nolan, Baker Botts LLP, New York, NY, for defendants.

GERARD E. LYNCH, District Judge:

Plaintiff Continental Energy Corporation ("Continental"), an oil and gas exploration firm, brings this action against defendants Cornell Capital Partners, L.P. and Yorkville Advisors Management, LLC (collectively, "Cornell"), a private equity fund, seeking a declaratory judgment that a an investment contract between Continental and Cornell is void for lack of consideration, and related relief. Cornell counterclaims for a declaration that the contracts are valid and enforceable, and have been breached by Continental. The parties have cross-moved for summary judgment on all claims. Defendants' motion will be granted and plaintiff's denied.

## BACKGROUND

The facts are straightforward and essentially uncontested. Seeking to raise capital to drill for oil in Indonesia, Continental approached a number of investors. Eventually, Cornell (a group

composed of former members of another investment firm that had negotiated an abortive transaction with Continental) entered an equity finance agreement with Continental. The terms of the transaction were embodied in a series of written agreements centered on an Equity Line of Credit Agreement (the "Agreement"), which were signed on September 18, 2001.

Under the terms of the Agreement, Cornell committed to purchase up to $20 million worth of Continental common stock, at Continental's discretion, over the following three years. The Agreement authorized Continental to issue shares of its stock to Cornell, which Cornell was obliged to purchase at a share price equal to 91% of the lowest closing bid price of Continental stock during a specified trading period. (Agreement § 2.1(a).) As a condition precedent to Continental's right to issue stock to Cornell, Continental was obligated to file a registration statement with the Securities and Exchange Commission ("SEC") that would permit Cornell to resell any stock issued pursuant to the Agreement. (Id. § 7.2(a).) In this regard, Continental agreed to "use its best efforts to comply with all applicable rules and regulations of the SEC in connection with any registration" of the securities. (Registration Rights Agreement § 3n.) In exchange for Cornell's commitment to provide such capital on demand, Continental agreed to pay certain commitment fees, including issuing one million shares of its common stock upon execution of the Agreement, and $250,000 worth of additional shares either six months after the filing of an effective registration statement or nine months after the execution of the Agreement, whichever was earlier. (Agreement § 12.4(b).)

The Agreement includes a merger clause, providing that the Agreement supersedes all prior oral or written agreements among the parties, and further providing that "[n]o provision of this Agreement may be waived or amended other than by an instrument in writing signed by the

2

party to be charged with enforcement." (Id. § 12.2.) The Agreement also contains a choice of law clause providing that the Agreement shall be governed by and interpreted according to New York law. (Id. § 9.1.)

On or about the date of the execution of the Agreement, Continental did deliver the one million shares of stock as promised. However, Continental never filed a registration statement as required by the Agreement. Accordingly, it never became empowered to demand capital from or issue stock to Cornell as contemplated by the Agreement. In July 2002, Cornell demanded that Continental provide the $250,000 worth of stock constituting the second portion of the commitment fee, which (given that a registration statement had not been filed) had come due nine months after the execution of the Agreement. Continental never complied with this demand, and this action followed.

## DISCUSSION

I. Summary Judgment Standard

Summary judgment shall be granted if the Court determines that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A "genuine issue of material fact" exists if the evidence is such that a reasonable jury could find in favor of the non-moving party. Holtz v. Rockefeller & Co., 258 F.3d 62, 69 (2d Cir. 2001). The moving party bears the burden of establishing the absence of any genuine issue of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). In deciding a summary judgment motion, the Court must "resolve all ambiguities and draw all reasonable inferences in the light most favorable to the party opposing the motion." Cifarelli v. Babylon, 93 F.3d 47, 51 (2d Cir. 1996). In addition, the Court is not to make any credibility

assessments or weigh the evidence at this stage. Weyant v. Okst, 101 F.3d 845, 854 (2d Cir. 1996).

That both parties have moved for summary judgment does not necessarily mean that summary judgment is appropriate for either side. Home Ins. Co. v. Aetna Casualty & Surety Co., 528 F.2d 1388, 1390 (2d Cir. 1976). In this case, however, the mutual agreement that the case can be resolved on summary judgment is correct. The dispute between the parties turns entirely on the interpretation of the Agreement, and the legal effect of a handful of additional undisputed facts.

II. Validity of the Agreement

Continental's claim that the Agreement is void for lack of consideration is totally lacking in merit. Under New York law, "[i]t is well established that the 'slightest consideration is sufficient to support the most onerous obligation' and that the courts are not to inquire into the adequacy of consideration." Caisse Nationale de Credit Agricole v. Valcorp, Inc., 28 F.3d 259, 265 (2d Cir. 1994), quoting Mencher v. Weiss, 306 N.Y. 1, 8 (1953). "Generally, parties are free to make their own bargains, and, absent a claim of fraud or unconscionability, it is enough that something of real value in the eye of the law was exchanged." Ferguson v. Lion Holdings, Inc., 312 F. Supp. 2d 484, 494 (S.D.N.Y. 2004) (internal citations and quotations omitted).

Here, there is no question that the Agreement provided to Continental extremely valuable legal rights, far beyond the "slightest consideration" requisite to create a binding contract. Under the Agreement, Continental acquired the right to demand and receive from Cornell infusions of capital of up to $20 million, at its sole discretion. Like an agreement to create a line of credit in exchange for the payment of a fee, the Agreement provided Continental with an

4

ability to draw down financing as needed. This is more than ample consideration to support the commitment fees Continental obligated itself to pay, whether or not it ever called upon the financing that Cornell pledged to provide.

III. Impossibility of Performance

In its opposition to Cornell's motion for summary judgment, Continental shifts ground, essentially abandoning the argument of lack of consideration in favor of a claim that the Agreement is unenforceable because of impossibility of performance.[1] Continental argues that performance of the Agreement was frustrated because it was legally impossible for it to file a registration statement, since the transaction contemplated in the Agreement "was not consistent with applicable SEC regulations." (Pl. Mem. Opp. Summ. J. 5.) According to Continental, the Agreement "was executed in a form no longer approved by the SEC," as the "pricing mechanism . . . set forth in the . . . Agreement would not be acceptable to the SEC," and there was thus "no way a registration statement would be approved by the SEC with that pricing mechanism in it." (Id.) Continental's argument, however, is completely devoid of legal or factual support.

It is common ground that "[p]arties cannot ordinarily contract to perform the impossible; the doctrine of impossibility is implicated where performance is forbidden or prevented by law or decree or administrative action in that location. . . . So long as the contracting party is acting in good faith, it is discharged from duty when the performance could not be effected pursuant to

---

[1] Continental also makes no effort to defend, and therefore is deemed to have abandoned, its Second Cause of Action, which asserts that Cornell breached the Agreement by failing for preform certain brokerage and research services. (Compl. ¶¶ 10, 18.) In any event, the claim is meritless, as the Agreement contains no terms requiring Cornell to provide any such services, and the merger clause precludes Continental from relying on any promises allegedly made during negotiations preceding execution of the written Agreement.

5

local law." In re Flag Telecom Holdings Ltd., 320 B.R. 763, 771 (S.D.N.Y. 2005) (internal citations and quotations omitted). Indeed, the Agreement itself contains a provision requiring that the transaction comply with applicable laws and SEC regulations. (Agreement § 7.2(e).) Thus, if SEC regulations in fact prohibited the registration of the Continental stock that is the condition precedent to the performance of the Agreement, Continental would be correct that its performance would be excused.

However, Continental offers no evidence whatsoever of any SEC regulation to that effect. Nowhere in its brief does it cite or refer to a single SEC regulation, decision, or pronouncement of any kind, nor does it identify the source of the prohibition that it claims prevented registration of stock priced according to the mechanism set forth in the Agreement. Nor does Continental present an affidavit or testimony from any expert witness knowledgeable in SEC practice to support the proposition that the SEC has a policy or practice of refusing registration to securities so priced. The closest thing to evidence of this kind proffered by Continental is testimony by its CEO Richard McAdoo that he was advised by a lawyer named Clay Parker that registration would be impossible. (McAdoo Dep. 92-97.) This statement, however, is inadmissible hearsay if offered to prove the truth of the matter asserted – that is, that SEC regulations or policies would in fact prevent registration of the securities with the pricing mechanism contained in the Agreement. Fed. R. Evid. 801(c), 802. "[O]nly admissible evidence need be considered by the trial court in ruling on a motion for summary judgment." Raskin v. Wyatt Co., 125 F.3d 55, 66 (2d Cir. 1997); see also Fed. R. Civ. P. 56(e) (summary judgment

affidavits "shall set forth such facts as would be admissible in evidence").[2]

Continental thus provides neither admissible evidence nor citation to legal authority to support its bald assertion that SEC regulations prevented the registration of the securities and the performance of the Agreement.[3] It has had ample opportunity to do so. Cornell demanded compliance with the commitment fee provisions of the Agreement in July 2002; this action has been pending since January 2004. Nevertheless, Continental proffered in its opening brief no supporting legal analysis, evidentiary support, or expert opinion to back up its claims regarding SEC regulations or policy. Cornell's submission in opposition to Continental's cross-motion, which calls attention to the absence of supporting authority or evidence, was filed in June 2005; Continental has not filed a reply brief. On this record, Continental has raised no genuine issue of material fact regarding impossibility of performance.

---

[2] The hearsay rule does not preclude admission of Parker's statement to prove the state of mind of the Continental executives who allegedly were privy to the statement, but for that purpose it is irrelevant; the doctrine of impossibility "excuses a party's performance only when [an intervening development] makes performance objectively impossible." Kell-Kim Corp. v. Central Markets, Inc., 70 N.Y.2d 900, 902 (1987), quoted in Burke v. Steinmann, No. 03 Civ. 1390 (GEL), 2004 WL 1117891, at *9 (S.D.N.Y. May 18, 2004). It is not enough that Continental *believed* that performance was impossible; for the impossibility doctrine to apply, performance must actually *be* impossible.

[3] Cornell, in contrast, asserts that the SEC has approved a registration that contains a pricing mechanism similar to the one in this Agreement. (Def. Reply Mem. Supp. Summ. J. 6-7, citing Nolan Decl. II Ex. K.) While the provisions at issue in the example provided by Cornell do indeed appear similar to those here, the Court declines the invitation to make an independent evaluation of SEC practice based on a single instance, or an independent analysis of whether the two cases are indeed parallel. Continental bears the burden of demonstrating impossibility, United States v. Int'l Bhd. of Teamsters, 816 F. Supp. 864, 873 (S.D.N.Y. 1992), and it has offered no evidence whatsoever to support its theory. That is sufficient to reject Continental's position.

IV. Remaining Claims

Continental's claims for unjust enrichment, conversion, and replevin, which seek return of the one million shares already provided to Cornell, are all premised on the invalidity or frustration of the Agreement. Since Continental's position in this regard is without merit, Cornell is entitled to summary judgment on those claims as well. As there is no dispute that Continental has not performed its promise to deliver the second portion of the commitment fee, and its defense to Cornell's claim for breach of contract is premised solely on its claims of invalidity of the contract, Continental is entitled to a declaratory judgment not only that the Agreement is valid and enforceable but also that Continental has breached the contract. In light of that determination, Cornell's counterclaim sounding in promissory estoppel and detrimental reliance is dismissed as moot.

**CONCLUSION**

Accordingly, for the reasons stated above, defendants' motion for summary judgment dismissing plaintiff's claims is granted; defendants' motion for summary judgment in their favor on their counterclaims is granted as to Count One and Count Two, and Count Three is dismissed as moot; and plaintiff's cross-motion for summary judgment is denied.

SO ORDERED.

Dated: New York, New York
December 28, 2005

_____
GERARD E. LYNCH
United States District Judge